1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LINDA MICHAELA CARROLL,

                    Plaintiff,

   v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                 Defendant.

Case No. 3:13-cv-05817-RBL-KLS

REPORT AND RECOMMENDATION

Noted for July 18, 2014

      Plaintiff has brought this matter for judicial review of defendant's denial of her

application for disability insurance benefits.  This matter has been referred to the undersigned

Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as

authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  After reviewing

the parties' briefs and the remaining record, the undersigned submits the following Report and

Recommendation for the Court's review, recommending that for the reasons set forth below,

defendant's decision to deny benefits should be affirmed.

FACTUAL AND PROCEDURAL HISTORY

      On February 25, 2010, plaintiff filed an application for disability insurance benefits,

alleging disability as of March 5, 2010, due to migraines and arthritis of the knees and shoulders,

and degenerative disc disease of the cervical spine.  See Administrative Record ("AR") 104-05,

129.  Plaintiff's application was denied upon initial administrative review and on

reconsideration. See AR 58-60, 62-63.  A hearing was held before an administrative law judge

REPORT AND RECOMMENDATION - 1

("ALJ") on January 12, 2012, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert ("VE"). <u>See</u> AR 30-54.

On January 27, 2012, the ALJ issued a decision in which plaintiff was determined to be not disabled. <u>See</u> AR 14-29.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on July 17, 2013, making the ALJ's decision defendant's final decision. <u>See</u> AR 7-11; <u>see also</u> 20 C.F.R. § 404.981.  On September 18, 2013, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. <u>See</u> Dkt. No. 1.  The administrative record was filed with the Court on November 27, 2013. <u>See</u> Dkt. No. 9.  The parties have completed their briefing, and thus this matter is now ripe for judicial review and a decision by the Court.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for further proceedings, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in discounting plaintiff's credibility; and (3) in assessing plaintiff's residual functional capacity.  For the reasons set forth below, the undersigned disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that defendant's decision be affirmed.

<u>DISCUSSION</u>

The determination of the Commissioner of Social Security (the "Commissioner") that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986); <u>see also</u> <u>Batson v. Comm'r Soc. Sec. Admin.</u>, 359 F.3d 1190, 1193 (9th Cir. 2004); <u>Carr v. Sullivan</u>, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless,

REPORT AND RECOMMENDATION - 2

1    be set aside if the proper legal standards were not applied in weighing the evidence and making

2    the decision.") (citing <u>Brawner v. Sec'y of Health and Human Serv.</u>, 839 F.2d 432, 433 (9th Cir.

3    1987)).

4         Substantial evidence is "such relevant evidence as a reasonable mind might accept as

5    adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (citation

6    omitted); <u>see</u> <u>also</u> <u>Batson</u>, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if

7    supported by inferences reasonably drawn from the record."). "The substantial evidence test

8    requires that the reviewing court determine" whether the Commissioner's decision is "supported

9

10   by more than a scintilla of evidence, although less than a preponderance of the evidence is

11   required." <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence

12   admits of more than one rational interpretation," the Commissioner's decision must be upheld.

13   <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence

14   sufficient to support either outcome, we must affirm the decision actually made.") (quoting

15   <u>Rhinehart v. Finch</u>, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

16

17   I.    <u>The ALJ's Evaluation of the Medical Evidence in the Record</u>

18        Plaintiff argues that the ALJ erred by failing to reference or assess the medical opinion of

19   treating physician James M. Mok, MD, that plaintiff's statement that "sitting at a desk upright for

20   extended periods of time exacerbates [plaintiff's] neck pain" was consistent with plaintiff's MRI

21

22
_____

23   [1] As the Ninth Circuit has further explained:

24        . . . It is immaterial that the evidence in a case would permit a different conclusion than that
         which the [Commissioner] reached.  If the [Commissioner]'s findings are supported by
         substantial evidence, the courts are required to accept them.  It is the function of the
25       [Commissioner], and not the court's to resolve conflicts in the evidence.  While the court may
         not try the case de novo, neither may it abdicate its traditional function of review.  It must
26       scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are
         rational.  If they are . . . they must be upheld.

<u>Sorenson</u>, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 3

1   and physical examination findings.  Dkt. No. 11, pp 6; AR 257.  This opinion was significant

2   because the ALJ determined at step four that plaintiff was capable of returning to her past

3   relevant work as a bookkeeper, which is classified as a sedentary occupation.  See AR 27.  The

4   ALJ's failure to address Dr. Mok's medical opinion was an error.  See Flores v. Shalala, 49 F.3d

5   562, 570-71 (9th Cir. 1995).

6       The Commissioner "may not reject 'significant probative evidence' without explanation."

7   Flores, 49 F.3d at 570-71 (quoting Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984)

8   (quoting Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981))).  The "ALJ's written decision

9   must state reasons for disregarding [such] evidence." Flores, 49 F.3d at 571.  As defendant points

10  out, however, the residual functional capacity ("RFC") determination, which the ALJ relied on to

11  find plaintiff not disabled, was consistent with Dr. Mok's opinion.

12      The RFC determination limited plaintiff to "work that allows her to change positions

13  between sitting or standing every 30 minutes to stretch."  AR 20.  This limitation reasonably

14  accommodated Dr. Mok's opinion that plaintiff could not sit upright at a desk for extended

15  periods of time without increased pain.  See Allen, 749 F.2d at 579 ("Where there is conflicting

16  evidence sufficient to support either outcome, the court must affirm the decision actually made.")

17  (quoting Rhinehart, 438 F.2d at 921).   It also reasonably accommodated plaintiff's own

18  testimony that she could sit "[a]bout 20 minutes, half an hour, and then I just have to keep

19  getting up and moving around.  And then if I sit any more than that, I start getting the neck aches

20  and the neck aches develop into migraines." AR 43.  For these reasons, the ALJ's failure to

21  assess Dr. Mok's opinion was harmless as it did not impact the ALJ's ultimate nondisability

22  finding.  See Molina v. Astrue, 674 F.3d 1104, 1117-1122 (9th Cir. 2012)( legal errors

23  committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate

24

25

26

REPORT AND RECOMMENDATION - 4

disability conclusion); see also 28 U.S.C. § 2111; Shinsheki v. Sanders, 556 U.S. 396, 407 (2009)

II.      The ALJ's Assessment of Plaintiff's Credibility

Plaintiff next argues that the ALJ erred in assessing plaintiff's credibility because Social Security Ruling ("SSR") 96-7p required the ALJ to credit plaintiff's subjective allegations of disability as plaintiff's allegations were substantiated by objective medical evidence.  Dkt. No. 11, pp 2-6 (citing SSR 96-7p, 1996 WL 374186; Jones v. Heckler, 760 F.2d 993, 997 (9th Cir 1985)(finding it was improper for an ALJ to discredit testimony of a claimant where testimony was supported by objective findings)).  In support of this argument, plaintiff references the various objective imaging studies—including magnetic resonance imaging ("MRI"), x-ray, and bone scan findings—in the record.  Although the objective medical evidence shows that plaintiff has medically determinable neck, shoulder and knee impairments, the imaging studies referenced by plaintiff do not support a conclusion that the severity of plaintiff's impairments meet or medically equal the severity of a listed impairment.[2]  See AR 19-20.  Nor do these studies provide clear evidence of the intensity, persistence or functionally limiting effects of plaintiff's pain and other symptoms.   For these reasons, it was necessary for the ALJ to reach a credibility determination.  See SSR 96-7p, 1996 WL 374186  *1.

Plaintiff relies on Jones v. Heckler, 760 F.2d 993 (9th Cir 1985), to support her argument that the ALJ should have credited her allegations of disability; however, the case at bar is readily distinguishable.  In Jones, the objective findings included vocational test results that, according to the VE, showed the claimant "would have a very difficult time competing in virtually any job…" Id. at 997-98.  This testing demonstrated "an intellectual capacity below the fifth

---

[2] Nor does plaintiff take issue with the ALJ's finding that her impairments did not meet or medically equal the severity of a listed impairment.

REPORT AND RECOMMENDATION - 5

percentile; a score of third percentile on the oral directions test; zero percentile on mechanical ability; reading, spelling and arithmetic at the 3.9 grade level; combined hand and finger dexterity at the third percentile with below average potential; and fine hand-eye coordination at the fifth percentile, with very low fine finger dexterity".  Id. at 997.

Here, the objective medical findings identified by plaintiff are not conclusive of disability or specific functional limitations.  See AR 215 (2010 cervical spine MRI showing "multi-level facet and uncal vertebral joint sclerosis and hypertrophy", mild neural foraminal narrowing, circumferential disc bulge, and mild canal stenosis), 217 (2007 knee MRI showing advanced osteoarthritis and extensive meniscal degeneration), 220 (whole body bone scan with "non specific findings most of which most likely are explained on the basis of post-traumatic degenerative changes"), 260 (2010 knee MRI showing interval worsening of osteoarthritis but no change in degeneration of meniscus).  For this reason, it was necessary for the ALJ evaluate the intensity, persistence and functionally limiting effects of plaintiff's impairments, and reach a determination regarding the credibility of plaintiff's complaints.  See SSR 96-7p, 1996 WL 374186 *1 (emphasizing "[w]hen the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities.  This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects"); see also 20 C.F.R. § 404.1529(c) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence, including your history, the signs and laboratory findings, *and statements from you*,

REPORT AND RECOMMENDATION - 6

1  your treating or nontreating source, or other persons about how your symptoms affect

2  you")(emphasis added).

3         In evaluating plaintiff's credibility, the ALJ offered clear and convincing reasons

4  supported by substantial evidence sufficient to properly reject plaintiff's testimony. See Lester v.

5  Chater, 81 F.3d 821, 834 (9th Cir. 1996)( unless affirmative evidence shows the claimant is

6  malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and

7  convincing").   As the Ninth Circuit has noted:

8

9           In trying to figure out what sorts of specific findings would be sufficient to
            discredit an allegation of pain, we can start with an unexceptionable
10          proposition: An ALJ cannot be required to believe every allegation of
            disabling pain, or else disability benefits would be available for the asking . . .
11          This holds true even where the claimant introduces medical evidence showing
            that he has an ailment reasonably expected to produce *some* pain; many
12          medical conditions produce pain not severe enough to preclude gainful
            employment.  The Disability Insurance and Supplemental Security Income
13          programs are intended to provide benefits to people who are unable to work;
            awarding benefits in cases of nondisabling pain would expand the class of
14          recipients far beyond that contemplated by the statute.

15

16  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (emphasis in original).

17         It is also notable that plaintiff does not challenge the legal sufficiency of any of the

18  specific bases offered by the ALJ to reject plaintiff's testimony.   For this reason, the

19  undersigned will only briefly highlight the ALJ's credibility analysis.  Among other reasons, the

20  ALJ observed that plaintiff's subjective complaints were inconsistent with her reported activities.

21  The Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an

22  adverse credibility determination," first, they can "meet the threshold for transferable work

23  skills," second, they can "contradict [a claimant's] other testimony." Orn v. Astrue, 495 F.3d

24  625, 639 (9th Cir. 2007).  Here, plaintiff's reported activities contradicted plaintiff's statements

25

26  regarding her neck pain.  For example, the ALJ noted that plaintiff continued to drive cars and

REPORT AND RECOMMENDATION - 7

1  ride motorcycles weekly despite her testimony that she experienced increased neck pain while

2  sitting.  <u>See</u> AR 23, 43-44, 45, 48-49, 140-41, 148-49); <u>but</u> <u>see</u> AR 142, 150 (where both plaintiff

3  and plaintiff's husband reported that plaintiff's impairments did not affect her ability to sit).

4        The ALJ also noted that plaintiff's treatment for her knees, neck and migraines had

5  generally been intermittent and conservative.  AR 23-24; <u>see</u> <u>e.g.</u> AR 256 (summarizing

6  plaintiff's treatment history and recommending continued conservative management for

7  symptom relief).   <u>See</u> <u>Meanal v. Apfel</u>, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly

8  considered physician's failure to prescribe, and claimant's failure to request serious medical

9  treatment for supposedly excruciating pain); <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1434 (9th Cir.

10 1995) (ALJ properly found prescription of physician for conservative treatment only to be

11 suggestive of lower level of pain and functional limitation).

12        Additionally, the ALJ observed that plaintiff received unemployment benefits after her

13 alleged onset date.  AR 23 (citing 108-09).  <u>See</u> <u>Copeland v. Bowen</u>, 861 F.2d 536, 542 (9th Cir.

14 1988) (noting ALJ gave specific reasons for rejecting claimant's credibility, including his receipt

15 of unemployment benefits, indicating he apparently considered himself capable of work and

16 holding himself out as being available therefore).   These were clear and convincing reasons

17 sufficient to reject plaintiff's symptom testimony.  <u>See</u> <u>Lester</u>, 81 F.3d at 834.  For these reasons,

18 the ALJ's assessment of plaintiff's credibility was free of legal error and supported by substantial

19 evidence.  <u>Hoffman</u>, 785 F.2d at 1425.

20 III.   <u>The ALJ's Assessment of Plaintiff's Residual Functional Capacity</u>

21        Plaintiff argues that the RFC was not based on substantial evidence because it was

22 unclear what evidence the ALJ relied on in crafting the accommodation for changing positions

23 between sitting or standing every 30 minutes to stretch.   Plaintiff's argument is without merit.

As noted by defendant, the RFC allowance for changing positions and stretching every 30 minutes is consistent with plaintiff's hearing testimony.   See AR 43 (plaintiff testified she could sit "[a]bout 20 minutes, half an hour, and then I just have to keep getting up and moving around. And then if I sit any more than that, I start getting the neck aches and the neck aches develop into migraines.").   The RFC determination reasonably accommodated plaintiff's testimony regarding the aggravating factors for her neck pain.  See Allen, 749 F.2d at 579 ("[i]f the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld).

Plaintiff also argues that the ALJ erred by failing to follow SSR 96-8p, which requires the ALJ to make a function-by-function assessment of a claimant's ability to walk, stand, sit, lift and carry prior to determining whether the claimant has met her burden at step four to show that she could not return to her past relevant work.  Dkt. No. 11, pp 6-9.   The RFC determination limited plaintiff to "less than a full range of sedentary work" and included several nonexertional, postural, and environmental limitations but no function-by-function analysis of plaintiff's ability to walk, stand, sit or lift and carry.  AR 20.  Relying on the testimony of the VE, the ALJ determined plaintiff could return to her past relevant work as a bookkeeper as actually performed by plaintiff and as generally performed in the national economy and, for these reasons, was not disabled under the Act.  See AR 24-25, 40-42, 51-54.  For the following reasons, the ALJ's determination that plaintiff was capable of performing work as a bookkeeper as generally performed in the national economy was consistent with the requirements of SSR 96-8p and free of legal error. See SSR 96-8p, 1996 WL 374184; Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001).

A claimant's RFC assessment is used at step four to determine whether she can do her past relevant work. See SSR 96-8p, 1996 WL 374184 *2.  The Commissioner recognizes

REPORT AND RECOMMENDATION - 9

"[t]hree possible tests for determining whether or not a claimant retains the capacity to perform … her past relevant work." SSR 82-61, 1982 WL 31387 *1.  The first test is "[w]hether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job."[3] Id.  The second test is "[w]hether the claimant retains the [residual functional] capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it." Id.  The third test is "[w]hether the claimant retains the [residual functional] capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." Id. at *2.

   With regard to the function-by-function analysis, SSR 96-8p states that the "RFC assessment must first identify the individual's functional limitations or restrictions and assess … her work related abilities on a function-by-function basis…  Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."  SSR 96-8p, 1996 WL 374184 *1.   SSR 96-8p further states that at "step 4 of the sequential disability evaluation process, the RFC must not be expressed initially in terms of the exertional categories of … work because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it."  Id. at *3.   However, the "RFC may be expressed in terms of an exertional category… if it becomes necessary to assess whether an individual is able to do his or her past relevant work as generally performed in the national economy."  Id.

   Because the ALJ determined plaintiff could return to her past relevant work as a bookkeeper as generally performed, any error in the ALJ's analysis of plaintiff's ability to perform her past relevant work as actually performed was harmless since the ALJ's analysis of

---

[3] A "[f]inding that a claimant has the capacity to do past relevant work" on this basis, though, "is likely to be fallacious and unsupportable." SSR 82-61, 1982 WL 31387 *1.

REPORT AND RECOMMENDATION - 10

plaintiff's ability to return to her past relevant work as generally performed was legally sound. See Molina, 674 F.3d at 1117-1122.  In determining plaintiff had the capacity to work as a bookkeeper as generally performed, the ALJ relied on the testimony of the VE regarding the DOT classification of the functional requirements of the occupation of bookkeeper, as well as the VE's professional experience with employers, to determine that plaintiff's RFC was consistent with the demands of the occupation of bookkeeper as generally performed in the national economy.[4]  See AR 41, 51-53; see also SSR 82-61, 1982 WL 31387 *2 (encouraging the use of a VE in cases where there may be insufficient information about how an occupation is usually performed).  Additionally, although failure to consider an individual's ability to perform the specific work related functions identified in a function-by-function analysis could be critical to the outcome of a case, it is important to note that plaintiff points to no specific functional limitation that the ALJ failed to include in the RFC.  See SSR 96-8p, 1996 WL 374184 *4 ("failure to first make a function-by-function assessment of the individual's limitations or restrictions could result in the adjudicator overlooking some of an individual's limitations or restrictions").

Moreover, SSR 82-61 specifically states that "if the claimant … can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'" SSR 82-61, 1982 WL 31387 *2. Additionally, the Ninth Circuit has recognized that to find a claimant not disabled at step four of the disability evaluation process, the ALJ may find that the claimant is able to perform *either* "[t]he actual functional demands and job duties of a particular past relevant job; *or* . . . [t]he functional demands and job duties of the occupation as generally required by employers

---

[4] SSR 82-61 states that the job descriptions in the DOT "can be relied upon . . . to define the job as it is usually performed in the national economy."  SSR 82-61, 1982 WL 31387 *2 (emphasis in original).

REPORT AND RECOMMENDATION - 11

throughout the national economy." <u>Pinto</u>, 249 F.3d at 845 (emphasis added).  The Ninth Circuit has "never required explicit findings at step four regarding a claimant's past relevant work both as generally performed *and* as actually performed.") (emphasis in original)).  For these reasons, the ALJ's determination that plaintiff was not disabled under the Act at step four of the sequential disability evaluation process is supported by substantial evidence and should be affirmed.  <u>See Hoffman</u>, 785 F.2d at 1425.

CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ properly concluded plaintiff was not disabled.  Accordingly, the undersigned recommends as well that the Court affirm defendant's decision pursuant to sentence four of 42 U.S.C. § 405(g).

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. <u>See also</u> Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **July 18, 2014**, as noted in the caption.

DATED this 25th day of June, 2014.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12